## BUFORD v. CLEVELAND & BUFFALO STEAMSHIP CO.

No. 10303.

United States Court of Appeals
Seventh Circuit.

Oct. 10, 1951.

As Amended on Denial of Rehearing
Nov. 21, 1951.*

* On the trial all concerned devoted their attention to the issues arising under Counts 1 and 3. The record is not too clear, but we were under the impression that Count 2 was dismissed. A re-examination of the record discloses that while the court did not pass upon the question of maintenance and cure, this count was not dismissed.

Russell V. Bleecker, Cleveland, Ohio, Harvey Wienke, Chicago, Ill., for appellant.

Robert F. Doyle, Chicago, Ill., for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

DUFFY, Circuit Judge.

This is an action in admiralty. Originally there were three counts to the libel. The jury found for the respondent as to Count 3 asking damages for willful and wanton conduct, and no issue is made here on that charge. The district court has not yet passed on Count 2 for maintenance and cure. Only the decree favorable to libelant, based on Count 1, which was brought under the Jones Act, 46 U.S.C.A. § 688, is before us for consideration.

Libelant alleges that on June 22, 1949, she was employed as a waitress on the S.S. City of Grand Rapids, owned by the respondent, and that on August 13 she discovered a sliver in the palm of her right hand, and that she went to the purser on said vessel for medical treatment. The libel alleges:

"5. * * * By reason of the negligence of the respondent, its agent, servant or employee, said purser cut into the hand of the libelant with a razor blade and after doing so prescribed medical treatment to the libelant. As a result of said negligence, libelant suffered an infection in her hand.

"6. Disregarding their duties in the premises respondent was careless and negligent in one or more of the following acts:

"A. Failing to provide proper and adequate medical supplies and personnel aboard said vessel;

"B. Failing to provide a reasonably safe place for libelant to perform her duties;

"C. Cutting into the hand of the libelant with a razor blade in an attempt to medically treat the complaint of libelant."

The libel further alleges that as a proximate result of said acts of negligence, libelant suffered a severe injury to her hand. As there was no proof at the trial that the respondent failed to provide a reasonably safe place for libelant to work, and the point is not urged on this appeal, negligence, if any, can only be found in respondent's alleged failure to provide adequate medical supplies or personnel, or in the use of a razor blade to lance libelant's hand.

The evidence discloses that during the 1949 summer season respondent's passenger vessel, S.S. City of Grand Rapids, made daily round trips between Chicago and Benton Harbor, Michigan, and in the evenings it made short "moonlight cruises" from Chicago harbor; that Robert P. Bolande, then a second year student at the Medical School of Northwestern University, was a member of the crew, acting as assistant purser; and that administering first aid was among the duties assigned to him.

On August 13, 1949, while the vessel was at Chicago, libelant, complaining of a pain in the palm of her hand, stated to her immediate supervisor that her hand was in such condition that she could not lift a malt can, whereupon she was sent to Bolande for first aid. Libelant told Bolande she thought she had a sliver, or possibly a small piece of steel wool, in her hand. Bolande took her into the first aid room and though an examination of her hand disclosed an area of inflammation, redness and tenderness between the distal portions of the second and third metacarpal bones, Bolande was unable to detect any foreign substance in her hand. After sterilizing an unused razor blade with a lighted match, and then sterilizing the skin of libelant's hand as well as the razor blade with an 8% solution of formaldehyde and alcohol, he made two small criss-cross incisions in her hand, to

the depth of two millimeters (approximately 1/13 of an inch), but still was unable to find any foreign object. He placed a bandage over the wound, and gave libelant a phenol solution which he instructed her to dilute in hot water and soak her hand in the diluted solution. Libelant testified she followed these instructions. She also testified that Bolande told her to be careful of her hand, and that when she was off duty she should soak her hand in the hot solution, which she did. The following day she again visited Bolande, and he gave her additional phenol solution. His testimony was that he then urged her to go to the Marine Hospital, but that libelant indicated a reluctance to do so because she did not want to lose time from work. Libelant claims that it was on her third visit, either that day or the following morning, when Bolande first urged her to go to the hospital. In any event, three days after she first went to Bolande for aid, she went to the hospital. After an examination penicillin was administered and she remained at the hospital, and on the next day, by surgical procedure lasting fifteen to twenty minutes, an incision was made in her hand and a small drainage tube inserted, which extended through her hand. For a period this wound was dressed daily, and eleven days after the operation she was discharged from the hospital with the recommendation she would be fit for full duty after one week's convalescence leave.

The case was tried to a jury which returned a verdict favorable to libelant on Count 1, assessing her damages at $7,500. Thereafter the trial judge reduced the amount of the damages to $4,500, and filed findings of fact and conclusions of law favorable to libelant based upon Count 1. The findings of fact, however, actually were a recital of the history of the case, and what were designated as conclusions of law were general findings of fact. The so-called conclusions pertinent to our inquiry were as follows:

"Court finds * * *

"That the libelant received medical treatment from an employee or agent of the said respondent;

"That said medical treatment was negligently performed;

"That the respondent was guilty of negligence in failing to provide proper and adequate medical supplies and personnel aboard the said vessel;

"That as a direct and proximate result of said negligence the libelant was caused to and did suffer severe injury to her hand, and was caused to suffer aches and pain. To her damage in the amount of four thousand five hundred Dollars; * * *."

It should be noted that there was no specific finding as to what act or omission of respondent or what part of the medical treatment given libelant by respondent's employee or agent constituted negligence. Nor is there any finding in what respect respondent failed to provide proper and adequate medical supplies and personnel aboard its vessel.

Although from the early days of this nation to the present time many courts and text writers have stated unequivocally that an appeal in admiralty is a trial de novo, this court has recognized the well established rule that, upon such an appeal, the findings of the district court as to the facts will be accepted by this court unless clearly against the preponderance of the evidence. Koehler v. United States, 7 Cir., 187 F.2d 933, 936; Leathem Smith-Putnam Navigation Co. v. Osby, 7 Cir., 79 F.2d 280, 282. However, it is also fundamental that, under the Jones Act, damages may only be recovered for negligence, De Zon v. American President Lines, Ltd., 318 U.S. 660, 671, 63 S.Ct. 814, 87 L.Ed. 1065; Jamison v. Encarnacion, 281 U.S. 635, 639, 50 S.Ct. 440, 74 L.Ed. 1082, and that a causal relationship must exist between the negligence and the injury. Jackson v. Pittsburgh S.S. Co., 6 Cir., 131 F.2d 668. The burden of proof was upon the libelant here to establish by evidence that the respondent was guilty of negligence proximately causing the injury complained of.

Here, as in the case of Potter Title & Trust Co. v. Ohio Barge Line, Inc., 3 Cir., 184 F.2d 432, 436, libelant did not contend respondent had a legal duty to employ

a doctor as a member of the crew. For a part of each day the S.S. City of Grand Rapids was docked in Chicago near the U. S. Marine Hospital where the members of the crew were eligible for treatment without charge or expense to them. Also the record is barren of proof that adequate medical supplies were not available on board the S.S. City of Grand Rapids; in fact the record proves that supplies and facilities for first aid were provided.

It follows that only if some act of omission or commission on the part of the assistant purser, Bolande, when he administered first aid to libelant, constituted negligence can respondent be held liable for damages.

Although there is no finding of fact on the point, it is without dispute in this record that libelant had an infection in her hand before she went to see Bolande. The district judge so stated at least three times during the trial. If a sliver was in fact responsible for the infection, there is no proof whence it came to be in her hand. Libelant's pleading does not claim that the first aid treatment administered by Bolande aggravated an infection already existing.

Negligence or malpractice is not presumed, but must be affirmatively proved. In this respect libelant has not discharged the duty that was upon her. Bolande sterilized a new razor blade to make the small cuts. Libelant's hand had also been sterilized in an antiseptic solution. No proof was offered that Bolande's method or procedure was improper. The only testimony on this point is that of Bolande who testified at the trial that after further medical study and education he would act in the same manner under conditions similar to those on August 13, 1949. Had first aid not been administered to libelant, it is entirely possible that the same surgical treatment for libelant would have been necessary. At least no proof was produced that it was the first aid treatment which adversely affected the condition of libelant's hand.

On the record before us, to sustain a finding of negligence on the part of respondent would be "speculation run riot."

As was stated in Moore v. Chesapeake & Ohio Railway Co., 340 U.S. 573, 578, 71 S. Ct. 428, 430, "Speculation cannot supply the place of proof."

The findings of the district court that respondent was negligent are clearly against the preponderance of the evidence and are clearly erroneous. The judgment of the district court must be reversed with instructions to dismiss Counts 1 and 3 of the libel and to proceed with the disposition of the issues under Count 2 as to maintenance and cure.

Reversed.