## LAKE v. STANDARD FRUIT & STEAM-SHIP CO.

No. 63, Docket 21743.
United States Court of Appeals
Second Circuit.

Argued Nov. 6, 1950.

Decided Nov. 29, 1950.

Robert Klonsky, of New York City (Harry Eisenberg, of New York City, on the brief), for plaintiff-appellant.

Geo. Whitefield Betts, Jr., of New York City (Hunt, Hill & Betts and George S. Bernhard, all of New York City, on the brief), for defendant-appellee.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal from a judgment dismissing a complaint containing two claims for relief: one for negligence under the Jones Act, 46 U.S.C.A. § 688, and the other for maintenance and cure. The action was tried to a jury; but after all the evidence had been presented, the court granted the defendant's motion to dismiss the complaint, holding that no negligence had been shown and that adequate maintenance and cure had been supplied. This appeal followed. The underlying facts claimed to show liability are not in doubt and may be summarized as follows:

During the spring and early summer of 1946, plaintiff-appellant Lake was employed as a wiper in the engine room of the M/V Irish Splice. At that time the vessel was owned by the United States, and operated for it by defendant-appellee Standard Fruit & Steamship Company. In the course of performing his duties during this period, plaintiff twice injured himself in the ship's engine room. The first accident occurred on May 22, when he was fishing some rags out of a hole about two feet below the engine room floor plates and located beneath certain switch boxes near an electric pump. While plaintiff was at this task on his hands and knees, one of his superiors called him

by name and he arose so quickly as to strike his back against the edge of a switch box. Plaintiff contends that he was reacting to what he thought an emergency call by the engineer for assistance in making repairs, though it developed at the trial that the engineer was simply announcing "coffee time." On these facts plaintiff claims that defendant was negligent in not providing a safe place in which to work and in not providing proper equipment, such as a long-handled tool equipped with a nail or other means adequate for retrieving rags. The lack of such a contrivance is also asserted to have made the ship unseaworthy.

The second accident occurred on or about July 3, 1946, when the plaintiff leaned over to pick up some different rags in another part of the same engine room, and again injured his back when the ship's roll pitched him against the engine room telephone booth. This time the rags were located in a box resting atop a bank of valves along the bulkhead. Not quite above, but somewhat astern of, the valves was the offending telephone booth, which resembled somewhat a box about three and a half feet above deck, open at the front and bottom. It was constructed of three sheets of plastic sound-insulating material, with two of the sheets forming the vertical sides, parallel with each other and about three feet apart, and the third sheet forming the top. Plaintiff was hurt, so he says, when his back made sudden contact with one of the metal-clad bottom edges of the booth at the distance above stated from the deck. His claim is that the telephone booth was unseaworthy as installed, and that the defendant was negligent in leaving it there because it made the surrounding working spaces unsafe.

 It is of course settled that damages may be recovered under the Jones Act "only for negligence." De Zon v. American President Lines, 318 U.S. 660, 671, 63 S.Ct. 814, 820, 87 L.Ed. 1065; Jamison v. Encarnacion, 281 U.S. 635, 639, 50 S.Ct. 440, 74 L.Ed. 1082. And while we recognize that in passing the Jones Act "Congress did not mean that the standards of legal duty must be the same by land

and sea," Cortes v. Baltimore Insular Line, 287 U.S. 367, 377, 378, 53 S.Ct. 173, 176, 77 L.Ed. 368, approved in De Zon v. American President Lines, supra, 318 U.S. at page 665, 63 S.Ct. at page 817, 87 L.Ed. 1065, and that in general the employer's duty will be broadly construed under it, Koehler v. Presque-Isle Transp. Co., 2 Cir., 141 F.2d 490, 491, certiorari denied 322 U.S. 764, 64 S.Ct. 1288, 88 L.Ed. 1591, we still do not feel that it is legally incumbent upon the employer to provide an accident-proof ship. For in this case the accidents are traced back to perfectly normal equipment on shipboard, and operations such as the procuring of rags on a simple and elementary sort. Plaintiff, now thirty-five years old, had been in the business since he was fifteen and should have been able to have gotton rags with which to work without hitting the permanent fittings of the ship. Thus, as to the telephone booth, plaintiff's own testimony on cross-examination was as follows:

"Q. That is the usual apparatus that ships have around the phone booth, isn't it? A. Yes, most of them are like that.

"Q. Nothing unusual about it? A. No."

In testifying with respect to the second accident he also stated that there were no unusual circumstances. Thus after it was ascertained that the ship was at sea at the time, the following was elicited from him on direct:

"Q. How was the ship crossing the water? A. Well, it was normal. We never had no bad weather.

"Q. Was there any roll to the ship? A. Ships always roll when she is on the way."

 Under these circumstances we think the case is within the rule of Roberts v. United Fisheries Vessels Co., 1 Cir., 141 F.2d 288, 293, certiorari denied 323 U.S. 753, 65 S.Ct. 81, 89 L.Ed. 603, where the court, acknowledging that the defense of "assumption of risk" was no longer available to the employer under the Jones Act, went on to say: "But where the injury or death is not the result, in whole or in part of the negligence of the employer, or his

agents, the provision has no effect to change the rights or remedies of the parties, and, in the case of a seaman, he takes the same risks of his calling as he did before under admiralty law. By the Jones Act he is given a right of action for the negligence of his employer which he did not have before, but the usual risks of the calling are not shifted on to the employer if the employer is guiltless of any fault."

We recognize that juries are given and should be given a wide scope in determining all questions of fact. But when it appears, as here, that involved are only "the obvious and well-known risks of the business" then there is an absence of negligence in law and the case will not be left to the jury. De Zon v. American President Lines, supra.

In his second claim for relief plaintiff alleged that the defendant "neglected and refused to supply the plaintiff with the expenses of his maintenance and cure." But the "accident report," dated August 9, 1946, signed by the plaintiff and notarized, acknowledged his receipt of $108.50 on this account, at the rate of $3.50 a day for 31 days. While he attempted on the witness stand to deny that this was the actual amount he had received, he did acknowledge receipt of some amount which he left indefinite. It appears on the evidence that he did receive maintenance and cure at the going rate for the entire period from his discharge from the ship until his discharge from the out-patient clinic of the U. S. Marine Hospital after several heat treatments. We cannot see that more was due him.

After the defendant had filed its answer, it sought to amend it to take advantage of the rule eventually established by the Supreme Court in Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692, that only the United States, and not the operator-general agent, may be held responsible under circumstances such as were asserted here by the plaintiff. The district judge before whom this motion came for a hearing refused the permission to amend on the ground of possible prejudice, because of delay, to the plaintiff in presenting a claim against the government, though it would seem that this contention could be valid, at most, only with respect to the first accident. Plaintiff here contends that the trial judge refused to follow the "law of the case" as thus set by his colleague. It is true that the trial judge did express some doubts as to the earlier ruling, but he followed it to the point of ruling on the merits as to both of plaintiff's claims. Plaintiff therefore certainly has no grounds of complaint on this score; and the defendant is making no complaint.

Judgment affirmed.