**Charles H. CROWSON, Appellant,**

v.

**THE KANSAS CITY SOUTHERN RAILWAY COMPANY,
Appellee.**

**No. 11–98–00236–CV.**

Court of Appeals of Texas,
Eastland.

Dec. 8, 1999.

David Allen Furlow, Morris & Campbell, Robert Tramuto, Jones & Granger, Houston, for appellant.

Daniel Flatten, Jenkens & Gilchrist, Houston, Robert Gilbreath, Jenkens & Gilchrist, Dallas, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## OPINION

TERRY McCALL, Justice.

This is an appeal asserting that charge error and jury misconduct occurred during

a jury trial in a railroad employee's personal injury case filed under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. (West 1986) (FELA). We affirm.

## Background Facts

Charles H. Crowson worked for the Kansas City Southern Railway Company (KCS) for 19½ years. In 1990, he became foreman of a three-person crew that installed railroad crossing signals for KCS. To install the signals, the crew had to dig a ditch on either side of the roadway with a backhoe, bore a tunnel under the roadway with a boring machine, push sections of ten-foot long galvanized conduit through the tunnel using the backhoe, and run the electrical wiring through the conduit to the signals from the relays and batteries located in a small housing. Each crew was furnished with a pickup, a truck with a "knuckle boom," a backhoe, and a trailer to carry the backhoe. The knuckle boom is an articulated boom crane which is used for lifting objects.

Crowson first injured his back in 1993 while reaching to close a sliding top on the back half of the bed of a pickup. His doctor gave him a full release without restrictions in August 1993; however, Crowson did not immediately return to work for KCS. He first worked on his dad's farm and then in a job picking up batteries for a company that recycles batteries used in railroad operations. He returned to his job as foreman at KCS in February 1994.

In June 1994, Crowson and a crew member were placing conduit into position in an open ditch. While manually unloading a length of conduit from the truck, Crowson claimed that he severely injured his back. Although he continued working that Thursday, he stayed home on Friday. On Sunday, his wife took him to the emergency room. Crowson subsequently underwent four back surgeries and now has a permanent injury.

Crowson's suit alleged that KCS was negligent in failing to provide him with adequate safety training, with a safe work-place, with the equipment necessary to safely unload and move the conduit, and with enough crew members and in assigning him to perform work it knew or should have known would aggravate a prior back injury. In defending the suit, KCS sought to prove that it was not negligent and that, if there was any negligence, Crowson was negligent as a crew foreman in failing to request and obtain any additional equipment he later claimed was needed to safely perform the work. Crowson submitted an assumption of the risk instruction for the court's jury charge which was rejected by the court. The court did give a comparative negligence charge. The jury found damages in the amount of $662,709 but found KCS 25 percent responsible and Crowson 75 percent responsible for his injury. The trial court entered judgment on the verdict.

Crowson filed a motion for new trial asserting that the trial court erred in refusing to instruct the jury on assumption of the risk and that there was jury misconduct because one of the jurors provided the jury with a textbook mathematical formula which the jury used to calculate the present value of Crowson's damages. The trial court denied the motion for new trial. Following the expiration of the trial court's plenary power and after perfecting this appeal, Crowson filed a motion seeking reconsideration of his motion for new trial on the ground that the rules governing jury misconduct are unconstitutional. The trial court did not rule on this motion.

## Refusal of Assumption of the Risk Instruction Was Not Error

In his first two points of error, Crowson contends that the trial court erred by refusing his proposed assumption of the risk jury instruction and erred by failing to grant him a new trial for the same reason. We review the trial court's charge decision under the abuse of discretion standard. *Texas Department of Human Services v. E.B.*, 802 S.W.2d 647, 649

(Tex.1990). The trial court has wide discretion in determining the sufficiency and appropriateness of definitions and instructions. *Plainsman Trading Company v. Crews*, 898 S.W.2d 786, 791 (Tex.1995).

 Because this case is governed by federal law, we look to the federal cases for guidance.[1] Under the FELA, an employee is entitled to recover damages if the employer's negligence played any part in producing the injury, no matter how slight. *Rogers v. Missouri Pacific Railroad Company*, 352 U.S. 521, 77 S.Ct. 459, 1 L.Ed.2d 515 (1957). The FELA contains a mandatory rule of comparative negligence, so that the damages are reduced in proportion to the amount of injury caused by the employee's contributory negligence. Section 53. *Jamison v. Encarnacion*, 281 U.S. 635, 639, 50 S.Ct. 440, 74 L.Ed. 1082 (1930). The FELA does not, however, permit an employer to raise the defense of assumption of risk. *Tiller v. Atlantic Coast Line Railroad Company*, 318 U.S. 54, 67, 63 S.Ct. 444, 87 L.Ed. 610 (1943).

The court in *Taylor v. Burlington Northern Railroad Company*, 787 F.2d 1309 (9th Cir.1986), observed that there is some overlap between assumption of risk and contributory negligence but that the two defenses are not interchangeable:

> At common law an employee's voluntary, knowledgeable acceptance *of a dangerous condition that is necessary for him to perform his duties* constitutes an assumption of risk.... Contributory negligence, in contrast, is *a careless act or omission on the plaintiff's part* tending to add new dangers to conditions that the employer negligently created or permitted to exist. (Emphasis added)

*Taylor v. Burlington Northern Railroad Company, supra* at 1316.

 Crowson argues that KCS's defense relied upon assumption of risk, which is barred under the FELA, and that that defense was in effect presented to the jury in the form of contributory negligence. We disagree.

KCS's theory of defense was that it was not negligent and that, if there was any negligence, it was Crowson's negligence as a foreman in not asking for straps, in not using the knuckle boom on his truck to lift the conduit, in not using the backhoe to lift the conduit, and in not advising his superior if he thought additional equipment was needed. To support its argument that straps were not needed, KCS introduced testimony from a number of witnesses that the ten-foot sections of conduit weighed 103 pounds or less. The witnesses included the foreman of the warehouse whose job it was to supply the conduit to Crowson's signal gang. Crowson argued that the conduit was actually Schedule 80 pipe weighing 150 pounds; thus, two men lifting the pipe would be lifting 75 pounds each. The only evidence supporting Crowson's position was affirmative answers to his counsel's questions "were you-all using Schedule 80 pipe as your conduit?" and "Schedule 80?" The affirmative answers were given by Stanley Russell Taylor, a KCS supervisor, in his deposition. At trial, Taylor testified that the conduit was not Schedule 80 pipe and that KCS had never used Schedule 80 pipe.

Crowson testified that he had held a variety of foreman's jobs for KCS. We are long past the day when employees simply follow directions and are expected to engage in no independent thought. This is especially true when the complainant is an experienced foreman. One of the plaintiff's experts agreed that a foreman is responsible for the safety of his crew, and Crowson admitted that the knuckle boom could be used "to unload any apparatus in [the] area." Neil E. Nicholas, a crew

---

1. When FELA cases are brought in state court, federal law governs the substantive rights of the parties, and state rules govern procedural matters. *St. Louis Southwestern Railway Company v. Dickerson*, 470 U.S. 409, 411, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985); *Mitchell v. Missouri–Kansas–Texas Railroad Company*, 786 S.W.2d 659, 661 (Tex.), *cert. den'd*, 498 U.S. 896, 111 S.Ct. 247, 112 L.Ed.2d 205 (1990).

member, testified that he knew "that straps existed" and that, at the time Crowson was injured, KCS's rule was "safety is of first importance." An expert for Crowson testified that the Southern Pacific Railroad used straps to lift pipe weighing over 115 pounds. On cross-examination, the expert agreed ·that he would expect galvanized conduit weighing 110 pounds to be unloaded by hand and handled in the same manner as Crowson's crew had done the task. Though the crew was short one man when Crowson was injured, Crowson admitted that, even when there is a full crew, only two men carry the conduit. Crowson further admitted that KCS had a safety rule book, that he had attended safety classes, and that Rule 29 in the KCS safety rule book prohibited "lifting beyond normal physical capabilities." From this and other evidence in the record, the jury could have reasonably concluded that, if straps and other equipment were needed, Crowson as foreman should have requested them and that his omission constituted contributory negligence.

 The doctrine of assumption of risk implies that the employee and employer know about risks involved in doing a job but that the employee has consented to assume those risks. *Fashauer v. New Jersey Transit Rail Operations, Inc.*, 57 F.3d 1269 (3rd Cir.1995). The concept involves the plaintiff performing "a dangerous task or a dangerous job rather than quit or find employment elsewhere." *Fashauer v. New Jersey Transit Rail Operations, Inc.*, *supra* at 1278. It is evident from the record in this case that KCS took the position that Crowson's job posed no special risks because there were no dangerous conditions involved. Our reading of the entire record leads us to conclude that Crowson's job did not involve any risks not inherent in other jobs that require some lifting. The trial court below was correct when it concluded:

> In the instant case, the record establishes that the plaintiff, himself, was the supervisor who chose the method and means of carrying out the job in question. To the extent that there was, in fact, an unsafe condition or practice, such emanated from the plaintiff and, under the definition contained in *Jenkins [v. Union Pacific Railroad Company*, 22 F.3d 206 (9th Cir.1994) ], would more appropriately be considered contributory negligence (carrying out a general order in an unsafe manner) than assumption of the risk (complying with a direct order to work under unsafe circumstances).

Under the facts of this case, the court believes that it would have been inappropriate to submit the requested instruction.

We overrule Crowson's first two points of error.

### No Jury Misconduct

In his third point of error, Crowson argues that the trial court erred in overruling his motion for new trial based on jury misconduct. At the hearing on his motion, a juror testified that, at the request of the jury foreman, she brought in a textbook formula for discounting cash flows. According to her testimony, the foreman was an engineer who used formulas in his work, and she was attending college and majoring in engineering. The formula was in one of her textbooks. The juror testified that the jury used the discount formula to discount the value of Crowson's lost future wages.

One of Crowson's experts testified at length during the trial about the present value of Crowson's lost future wages. He pointed out that the discount rate would be affected by one's assumptions as to the rate of future inflation and the estimated future rate of return on Treasury bonds. The expert also emphasized that the discount rate would be affected by the number of years that one assumed Crowson would have continued working as a foreman. There was no evidence at the motion for new trial hearing that the jury used a discount rate or a number of years

that was not within the evidence of the case. Thus, it cannot be said that the jury disregarded evidence that was in the record as Crowson asserts.

TEX.R.CIV.P. 327(b) and TEX.R.EVID. 606(b) govern the asserted issue of jury misconduct in this case. Those rules provide that the only evidence of jury misconduct a trial court may consider is evidence tending to prove that an outside influence was brought to bear on a juror. *Wooten v. Southern Pacific Transportation Company*, 928 S.W.2d 76 (Tex.App.—Houston [14th Dist.] 1995, no writ); *Durbin v. Dal-Briar Corporation*, 871 S.W.2d 263, 272 (Tex.App.—El Paso 1994, writ den'd). The *Durbin* court defined what is meant by an "outside influence":

> "Outside influence" means a force external to the jury and its deliberations. Outside influence does not include information acquired by a juror and communicated to the others between the time the trial court instructs the jury and the time it renders a verdict, even where the information is not in evidence, and is unknown to jurors before trial. Outside influence, in the form of information not in evidence, must come from a non-juror.

■ This court held in *Bobbie Brooks, Inc. v. Goldstein*, 567 S.W.2d 902 (Tex.Civ. App.—Eastland 1978, writ ref'd n.r.e.), that the use of a calculator by jurors was not misconduct justifying a new trial. We now hold that the use of the discount formula by the jury in this case did not constitute an outside influence and that, therefore, there was no evidence of jury misconduct that could be considered by the trial court.

■ Crowson further asserts that Rules 327(b) and 606(b) are unconstitutional. Crowson did not raise this issue until he filed his motion to reconsider his motion for new trial. His motion to reconsider was filed after the trial court's plenary power had expired. TEX.R.CIV.P. 329b. A constitutional challenge not raised prop-

erly in the trial court is waived on appeal. *City of San Antonio v. Schautteet*, 706 S.W.2d 103, 104–05 (Tex.1986); *Walker v. Employees Retirement System of Texas*, 753 S.W.2d 796, 798 (Tex.App.—Austin 1988, writ den'd).

We overrule Crowson's third point of error.

### *This Court's Judgment*

The judgment of the trial court is affirmed.